**In re MILLER.**

District Court, E. D. New York.

Jan. 26, 1931.

Alfred S. Perlstein, of Brooklyn, N. Y., for bankrupt.

Sylvester & Harris, of New York City (by Samuel E. Schrier, of New York City), for trustee.

J. Arthur Adler, of New York City (by Max Ganz, of Brooklyn, N. Y.), for petitioning creditors.

INCH, District Judge.

This is an application to confirm a referee's report in a bankruptcy matter making allowances to an assignee and the attorneys for said assignee, the trustee, the bankrupt, and the petitioning creditors.

It is a case where the bankrupt first made an assignment for the benefit of creditors under the authority of the state law (Laws 1909, chapter 17, of the State of New York, known as the Debtor and Creditor Law [Consol. Laws, c. 12]) and subsequently was adjudicated a bankrupt under the federal law (11 USCA).

This court therefore was compelled to take up the administration of the bankrupt's estate for the creditors where the assignee left off. Quite often there is a considerable period of time between these two administrations.

In this case it was not long, for apparently the assignment was made to one Charles Schrier on June 3, 1930, and the

involuntary petition to adjudicate Miller a bankrupt was filed on June 9, 1930. However, the bankrupt was not served with the subpœna until June 11, 1930, on which day the assignee conducted a sale of the property of the bankrupt.

There is no criticism intended here of this sale or of the auctioneer or that the assignee did not obtain proper and fair prices for the merchandise so sold. It is possible that everything was done that could be done in this regard.

The referee reports that the assignee received the net sum of $557.64 representing the proceeds of the sale less the auctioneer's fees, etc., which have been found by the referee to be correct. In due time this sum less certain disbursements, which also are not here involved, was turned over to the trustee in bankruptcy and the latter reports a balance of $507.94 now in his possession applicable to the proposed allowances, etc.

The referee has allowed the assignee $10 for his services, and the attorney for the assignee $25. No criticism would be made of these amounts were it proper to make any allowance, under the circumstances, to these individuals.

This brings us to a real criticism which I think exists in such assignments and subsequent bankruptcies.

While there is no reason why a debtor may not thus avail himself of the state law if he prefers, if such state law is availed of both the assignor and the assignee must conform strictly to such state law and the various steps must be duly taken for the protection of creditors that are clearly outlined in that law.

One of the most important matters that concern creditors is the amount of the property, applicable to the payment of their debts, possessed by the debtor when he makes the assignment.

Accordingly, section 4 of the Debtor and Creditor Law, above mentioned, requires that such debtor must make an inventory and file it in the office of the county clerk and give a duplicate to the assignee either on the date of the assignment or not later than twenty days thereafter. This inventory, among other things, must set forth all the debtor's estate, both real and personal. If the assignor neglects to do this the assignee must do it within the subsequent ten days, in so far as he can get the information. It is further provided in said section that if the assignee fails to do this he may be removed.

In the case before me the referee states: "No inventory or auctioneer's report accompanies his (assignee) report so there appears to be no record of assets received by assignee or sold by the auctioneer."

The purpose of this memorandum is not to infer that this debtor had more assets than were sold or that there was anything wrong in the conduct of the assignee in this regard. The fact remains, however, that there was an entire absence before the referee of any required inventory or proof that one, if made, was ever filed or any information as to the estate or excuse for its absence.

The state law plainly requires promptness on the part of an assignee in securing this important information. In most cases the duty is a simple one and easily performed. The state law does allow a definite period for the "making and filing" of the formal inventory as to which time we may not interfere, but both the spirit and the intention of that law as well as common sense requires diligence on the part of an assignee to see that such information is obtained as soon as possible by him in some proper form and such information should accompany his application before the referee or some good reason shown for not having obtained it. In re Cornell, 110 N. Y. 351, 18 N. E. 142; McConnell v. Sherwood, 84 N. Y. 522, 38 Am. Rep. 537.

It may well be that if this court overlooks its duty to thus co-operate with the state court and see that the state law is complied with that by negligence, careless supervision over a debtor's estate, or worse, that estate when it finally reaches this court may be considerably less than would have been found and taken possession of by this court had it been appealed to by the creditors in the first instance. Constable v. Hardenbergh, 4 App. Div. 143, 38 N. Y. S. 694.

Accordingly, in cases where there has been an assignment for the benefit of creditors under the state law this court will not compensate an assignee or his attorney unless it is shown that the assignee has strictly complied with the law of the state of New York up to the time that this court took over the administration of the estate.

If debtors prefer to go into the state court, and the matter is subsequently transferred to this court, the former certainly expects us to do what we can to see that

the law of the state was strictly complied with before we compensate an assignee in this court for services so rendered.

The report is sent back to the referee with instructions to amend his report by striking out therefore any allowance to the assignee or the assignor's attorney unless it is shown that the assignee has complied strictly with the state law.

In making this memorandum I am assured of the approval of my associates as to the requirement for strict conformity with the state law by an assignee or his attorney before any allowances to them can be made.

The report is sent back to the referee for all purposes.